DECISION ON MOTION FOR A NEW TRIAL
This cause came on to be heard on Defendant's Motion for a New Trial following a jury verdict in the amount of $200,000.00 for Plaintiff Kevin Major and $5,000.00 for Plaintiff Elizabeth Major with respect to her claim for loss of consortium. The case was tried over an eight day period and while there were numerous witnesses with respect to the issue of liability the Court believes that its decision on the pending motion essentially can and should be predicated on the liability issue, and that to that end it must carefully examine the testimony of plaintiff, Kevin Major.
Before reviewing what the Court deems to be the controlling evidence, it is appropriate that the Court review the function of the trial justice when confronted with a Motion for New Trial. Our Supreme Court has on numerous occasions clearly articulated the standard to be applied by the trial justice in ruling on a Motion for New Trial. Perhaps, the standard is most clearly stated in the case of Barbato v. Epstein, 97 R.I. 191 at 193, where our Supreme Court wrote:
 "His duty is to consider in the exercise of his independent judgment all of the material evidence in the case in the light of his charge to the jury and to pass on its weight and the credibility of the witnesses. (Citation omitted). In discharging that duty he can accept some or all of the evidence as having probative force; or he can reject some of the testimony because it is impeached or contradicted by other positive testimony or by circumstantial evidence, or because of inherit improbabilities or contradictions which alone or in connection with other circumstances satisfies him of its falsity (citations omitted), or because it is totally at variance with undisputed physical facts or laws. (citation omitted); or he can add to the evidence by drawing proper inferences therefrom and giving weight thereto. (Citation omitted)".
Our Court continued on on page 194 by saying;
 "It is only after the completion of this process of acceptance, rejection, and addition that it becomes opportune for the trial justice to determine which of the two well-settled rules to apply. Stated otherwise, the application of the appropriate rule is made on the evidence accepted and inferences drawn therefrom and exclusive of so much thereof as may have been rejected. On that evidence he decides whether to approve the verdict even against doubts as to its correctness because the evidence is nearly balanced, or is such that different minds can naturally and fairly come to different conclusions thereon; or, in the alternative, to set it aside when his judgment tells him that it is wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponderance of the evidence. (Citation omitted)."
Turning now to the evidence, Plaintiff testified at trial that he was a truck driver employed by Valliere Trucking Company and at the time that he sustained the injuries alleged in his complaint, he was making a delivery to a tenant which occupied a portion of the premises owned by defendant and situated at 75 Eagle Street in the City of Providence. Plaintiff testified further that in order to make the delivery which consisted of anywhere from 30 to 70 one-half pound cartons it was necessary for him to traverse three flights of stairs; that he took four of the boxes on his own handtruck on each trip and that he was at about the end of the delivery when the incident which caused his injury occurred. The evidence shows that Plaintiff arrived at the Eagle Street Old Mill Building at around 11:00 a.m. on the day of the incident after having attempted to make the same delivery on the preceding evening.
Plaintiff's testimony was that he had walked the stairs to Eaton Manufacturings' premises when he first arrived on the day in question in order to obtain payment for his C.O.D. delivery. After obtaining payment, he went down the stairs and noted two nails sticking up from the second step from the top of the last set of steps leading to the floor on which Eaton was located. Plaintiff testified that he looked everything including that step over and noted "nothing alarming" although he did note some sort of a crack or split in the step. Plaintiff's testimony continued to the effect that he had made eight or more trips with the handtruck as aforesaid; that he had cautioned at least one unknown person to be careful with respect to the step in question; that as he delivered the boxes to Eaton sometimes he assisted the Eaton personnel in stacking the boxes and that on the last trip before completing the delivery, the second step from the top of the third set of stairs snapped while he was on it causing him to fall to the bottom of that flight of stairs. This testimony clearly is the linchpin of Plaintiff's case on liability. But for Plaintiff's testimony relative to the nails sticking up from the stair in question as contrasted with the testimony of Mr. Blogref, Defendant's former Maintenance Supervisor, who testified for Plaintiff but indicated that he had been up and down the stairs in question that morning on at least two occasions and noticed nothing wrong, there would not have been enough on liability for this case to withstand the Motion for Directed Verdict which flowed as surely as does winter follow fall following the close of Plaintiffs case and again after Defendant rested.
As indicated above the essence of Plaintiff's case is the question of his own credibility. During the course of the case, substantial evidence was received from Dr. John Ruggiano, a psychiatrist who treated Plaintiff. Generally this testimony was offered by Plaintiff on the question of damages suffered by Mr. Major and to counter Defendant's position that Plaintiff was a malingerer. The Court after observing Plaintiff during his testimony and during the course of the trial — hearing the conflicting versions of the events which form the basis for liability — hearing Plaintiff Kevin's various versions of how the accident occurred, as set forth not only in his testimony during the course of trial but also received in evidence from various medical practitioners who in obtaining a history of the injuries sustained by Plaintiff, were told various and sundry stories as to how the accident occurred — hearing Plaintiff deny previous psychological treatment for the same type of condition in the face of having been treated by Stephen Wallace for a period of one year prior to the incident which is the basis for the claims made by Plaintiff in this case — hearing Plaintiff testify that essentially he was bed or home ridden for a period of one year following his fall in the face of testimony from his brother, that places him at another location during the one year period, all caused the Court grave doubt with respect to Mr. Major's credibility. This led the Court to focus on testimony elicited from Dr. Ruggiano during the course of cross-examination during which he indicated that Plaintiff had an "entitlement syndrome" coupled with an internal requirement that he avoid responsibility for negative events which occurred to him.
Predicated upon all of the foregoing, it is the inescapable conclusion of this Court that in the exercise of its judgment, in passing upon the weight of the testimony elicited from and the credibility of this witness, it must disregard and reject the testimony of Mr. Major with respect to the events giving rise to his injuries. The Court also feels that Mr. Major's testimony with respect to his injuries, their duration and his slow recovery also were lacking in credibility. The Court finds that Mr. Major's testimony is totally lacking in credibility thus the Court finds that the verdict of the jury did not fully respond to the merits of the controversy and did not do substantial justice between the parties and is against the fair preponderance of the evidence.
Because the verdict in favor of Elizabeth Major with respect to her claim for loss of consortium is essentially a derivative claim from that of her husband, the Court will under all the attendant circumstances order a new trial in connection with both verdicts. The motion of the Defendant Robert Resnick is granted. Defendant is directed to present an appropriate order consistent with the provisions of this decision.